## UNITED STATES v. SYLVESTER.

(District Court, D. Connecticut. March 8, 1921.)

### No. 1321.

1. **Intoxicating liquors ☞244—Congress intended to confiscate interest of wrongdoer in transporting vehicle and to protect all innocent persons.**

The intent of Congress in enacting National Prohibition Act, tit. 2, § 26, providing for the forfeiture of an automobile in which liquor is illegally transported, unless good cause to the contrary is shown by the owner, and for the sale of such automobile and the payment of bona fide liens thereon, was to penalize only the wrongdoer, and to protect the interests of innocent persons in the vehicle unlawfully used.

2. **Intoxicating liquors ☞255—Conditional seller, proving bona fide lien on transporting vehicle and ignorance of unlawful use, receives payment of lien.**

A conditional seller of an automobile truck used by the buyer for the unlawful transportation of liquor, who proves that he has a bona fide lien for a balance due on the purchase price and that he had no knowledge of the unlawful use of the automobile, is entitled to the payment of his lien out of the proceeds of the sale of the automobile.

3. **Intoxicating liquors ☞252—Forfeiture of transporting vehicle not absolute, as under revenue laws.**

The forfeiture of a vehicle used for the unlawful transportation of intoxicating liquor under National Prohibition Act, tit. 2, § 26, is not absolute, as was the forfeiture of conveyances used in the removal of liquor on which the revenue tax was not paid, under Rev. St. § 3450 (Comp. St. § 6352).

4. **Intoxicating liquors ☞255—Innocent owner of vehicle, who loaned it to unlawful user, can secure return.**

An owner of an automobile, who loaned it to another without knowledge that it was to be used for the unlawful transportation of liquor, and without information which should have aroused his suspicions, is entitled to a return of the vehicle to him after its seizure while being used in such unlawful transportation.

5. **Intoxicating liquors ☞255—Lienor of transporting vehicle cannot secure its return.**

Under National Prohibition Act. tit. 2, § 26, one who has a lien on an automobile seized while being used for the transportation of intoxicating liquor is not entitled to have the vehicle returned to him, and thereby be enabled to profit by the transaction, but is limited to a repayment of the amount of his lien from the proceeds of the sale of the vehicle.

6. **Intoxicating liquors ☞255—Sale of forfeited vehicle should be abandoned, when highest bid does not equal bona fide liens.**

Where only a small amount of the purchase price of a vehicle had been paid, so that the lien of the seller, who was ignorant of the unlawful use of the automobile, is substantially equal to the value of the vehicle, and the highest bid at the marshal's sale does not equal the amount of the lien, the marshal should abandon the sale and report the facts to the court.

Proceeding by the United States against Anthony Sylvester for the forfeiture of a truck used in the illegal transportation of liquor. The Commercial Investment Trust filed a petition, reclaiming the truck as an assignee of the conditional seller thereof. Order entered for sale of the truck.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

George H. Cohen, Sp. Asst. U. S. Atty., of Hartford, Conn.

William A. Wright, of New Haven, Conn., for reclaiming petitioner.

THOMAS, District Judge. On July 26, 1920, the defendant and his brother bought a motor truck from the Diamond T Motor Truck Company, of New York City, on a conditional bill of sale for an agreed price of $3,300, and paid $1,100 the day the truck was delivered. On July 27, 1920, the Commercial Investment Trust, the petitioner in these proceedings, purchased for value, without notice, and before maturity, from the conditional vendor, the note and the conditional sale contract to secure the note. Subsequently two installment notes, of $183.33 each, were paid, so that there is now due on said contract the sum of $1,833.34. Both the conditional sale contract and the assignment of it were properly executed, acknowledged, and recorded.

The defendant was subsequently arrested and duly convicted of transporting intoxicating liquor in violation of the National Prohibition Act (41 Stat. 305), and paid his fine. Thereupon the government filed a petition asking that the motor truck used for the transportation of the intoxicating liquors, which is the same truck mentioned in the conditional bill of sale, and which was seized and is now in the possession of the enforcement officers, be ordered sold at public auction in accordance with the provisions of section 26 of title 2 of the National Prohibition Act. In due season, and in accordance with the provisions of the act, the Commercial Investment Trust intervened, by filing a reclaimer petition, asking for an order directing the delivery of the truck to the petitioner, on the ground that the title to the truck remained and was at all times vested in the petitioner under the terms of the conditional bill of sale by which the truck was sold, and that the illegal transportation of the intoxicating liquor by the defendant was without the knowledge or consent of the conditional vendor or his assignee.

The answer of the government admits (1) the proper execution of the conditional bill of sale and its proper assignment to the petitioner; (2) that the illegal transportation of liquor by the defendant was without the knowledge or permission of either the original vendor or the petitioner. But, even in view of the conceded facts, the government contends that the petition must be denied, and the truck sold in accordance with the provisions of section 26 of the act. So that the question here presented is this: Is a motor vehicle, bought on a conditional bill of sale and seized in the illegal transportation of intoxicating liquor in violation of the National Prohibition Act, subject to forfeiture and sale, where the same has been used for such illegal transportation by the vendee without the knowledge or permission of the vendor or his assignee?

[1] The answer to the question lies in the interpretation and construction to be given section 26, title 2, of the act, which, so far as it is here pertinent, provides:

"Whenever intoxicating liquors transported * * * illegally shall be seized by an officer he shall take possession of the * * * automobile, * * * and shall arrest any person in charge thereof. * * * The court

upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale, *shall pay all liens, according to their priorities, which are established, by intervention or otherwise, at said hearing or in other proceedings brought for said purpose, as being bona fide and as having been created without the lienor having any notice that the carrying vehicle was being used or was to be used for illegal transportation of liquor,"*

—and shall pay the balance of the proceeds into the treasury of the United States as miscellaneous receipts.

Thus it is apparent that this section makes it unlawful for any one to transport intoxicating liquor in and by means of any vehicle, and in addition declares that the vehicle thus used shall be forfeited. But it is apparent that the Congress intended to penalize only the wrongdoer. This is accomplished in two ways—first, by imposing a penalty for the offense of transporting intoxicating liquor; and, second, by confiscating *his interest* in the vehicle. The question, therefore, is to determine how to bring into practical operation the provisions of section 26, to the end that the wrongdoer may be properly punished, while the innocent parties may be protected against loss, as far as possible.

When a defendant is arrested for transporting intoxicating liquor, and the vehicle is seized, what is to be done with it depends upon what interest the defendant has in it. If he had no interest—that is, if he had stolen it, or had borrowed it from its real owner, who neither knew nor could be presumed to have knowledge of the illegal purpose for which it was to be used—manifestly the wrongdoer had no interest to forfeit, and it logically follows, under the provisions of the act, that the vehicle should be returned to its rightful owner, by order of court. If, on the other hand, the wrongdoer had an interest in the vehicle, his interest should be confiscated and the vehicle ordered sold. What, then, is to become of the interest of the conditional vendor or the interest of the mortgagee? Are such persons to lose their interest in the vehicle or the value of their property right? The answer is a negative one, and is found in the provisions of section 26, which guard against such loss, as far as possible.

[2] From its phraseology it is apparent that just such cases were in mind when the law was framed, and that the Congress realized that vehicles would be used for the illegal transportation of intoxicating liquor by persons who would purchase the same on conditional bills of sale, and that such vehicles would be used for such unlawful purpose without the knowledge or consent of the conditional vendor or his assignee. In order, therefore, to protect a person retaining title under a valid conditional bill of sale, or one who holds a valid chattel mortgage, such person must satisfy the court that he holds a bona fide lien and lacked the knowledge or information of the illegal purpose for which the vehicle was used or was to be used. Having done this, he is entitled to receive from the proceeds of the sale the amount of the lien, established by intervention or otherwise, after the costs as provided by law, are paid. Section 26 of the act seems so clear that there can

be no possible doubt but that it was the intention of the Congress to protect innocent vendors or mortgagees, as far as possible.

[3] Discussion of the principles of law found in U. S. v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555, U. S. v. Mincey, 254 Fed. 287, 165 C. C. A. 575, 5 A. L. R. 211, Logan v. U. S., 260 Fed. 746, 171 C. C. A. 484, U. S. v. One Saxon Automobile, 257 Fed. 251, 168 C. C. A. 335, and similar cases, are not germane, as prosecutions in those cases arose under section 3450 of the Revised Statutes (Comp. St. § 6352) which is a statute to protect the revenue of the government, and provides that the "conveyance * * * used * * * in the removal * * * shall be forfeited." No provision whatever is made to protect bona fide innocent vendors, or even owners. The conveyance is confiscated, and the confiscation is absolute, whether or not good cause is shown to the contrary; nor does it offend against the Fifth Amendment to the Constitution, which prohibits the taking of life, liberty, or property without due process of law. Grant Co. v. United States of America, 254 U. S. 505, 41 Sup. Ct. 189, 65 L. Ed. ——, decided by the Supreme Court on January 17, 1921.

[4] To justify an order for the return of the truck to the petitioner, reliance is placed by the petitioner on U. S. v. Brockley, 266 Fed. 1001; but the facts there are not the facts here. In that case Brockley borrowed the automobile, and on page 1002 the court said:

"The admitted facts in the present case show ownership and want of knowledge on the part of the vehicle's owners as to the purpose for which the vehicle was to be employed."

And continuing Judge Witmer said:

"Without any other attending circumstances, this is sufficient to warrant the court to order its return."

In that case the wrongdoer had no interest whatever in the automobile, and therefore there existed no interest which could be confiscated, while here we are asked to return the truck to the assignee of the conditional vendor, because it was sold on a conditional bill of sale, where it appears that about 45 per cent. of the purchase price has been paid by the vendees, thereby showing an interest that the wrongdoer had in the vehicle to that extent. It is thus apparent that the ruling in the Brockley Case cannot control here.

The intent of the Congress, as disclosed in section 26, here under discussion, is clearly expressed. The conclusions respecting its interpretation are:

First—The seizure, forfeiture, and sale of vehicles is not absolute, as under section 3450 of the Revised Statutes, but is subject to the order of court after it has heard all the facts of each case.

Second—An owner who transports intoxicating liquor illegally forfeits the intoxicating liquor and the vehicle and suffers a penalty.

Third—A conditional vendor or a mortgagee, who allows the vehicle to be used for such unlawful purpose with his knowledge, or who gives his consent to the illicit transportation, shall also forfeit all interest in or his lien upon the vehicle.

Fourth—A bona fide vendor or mortgagee, without having any notice that the vehicle was being used or was to be used for the illegal transportation of intoxicating liquor, shall be protected to the amount of his bona fide lien, as far as possible.

Fifth—The owner of a vehicle, who loaned it to another, who, in turn, transported intoxicating liquor therein, is entitled to a return of the vehicle, where he had no knowledge of the purpose of the borrower, and no facts are shown which should have aroused his suspicion.

Sixth—In the second and third instances, the vehicle shall be sold by the United States marshal at public auction, and after the costs are paid, as provided by law, then the balance of the proceeds of the sale shall be turned into the treasury of the United States.

Seventh—In the fourth instance, after the bona fide lien and lack of notice or knowledge have been established, the vehicle shall be sold at public auction, and after the costs, as provided by law, have been paid, the United States marshal shall then pay, if possible, the amount of the bona fide lien in full to the proper person, and the balance, if any, shall be turned into the treasury of the United States.

[5] To grant this petition would permit a lienor or mortgagor to profit by the transaction, and that result was never intended by the framers of the law. Cases may arise where the application of this rule would result in realizing an insufficient amount at the sale to pay the full amount of the bona fide lien; but where a substantial amount has already been paid, as here, on a new truck, undoubtedly the full amount of the balance due, plus the costs, will be realized, so that the lienor will be fully protected.

[6] Where, however, the amount paid by the purchaser is small in proportion to the purchase price, so that a large amount will have to be realized by the United States marshal at the sale, and where the highest bid is insufficient to meet the costs and the amount of the bona fide lien, the United States marshal shall then abandon the sale and report the facts to the court for further instructions. In such event further hearing will be had before the court to determine then whether the lienor has shown "good cause" why the vehicle should not be sold.

As the instant case clearly falls under the fourth and seventh conclusions, stated supra, the prayer of the petitioner, in so far as it requests the return of the truck, is denied. Therefore let an order be prepared forthwith, providing for the sale by the United States marshal, at public auction, of one Diamond T motor truck, No. 12347, described in the petition, in accordance with the provisions of section 26, title 2, of the National Prohibition Act, and let the proceeds of the sale, after costs as provided by law are paid, be turned over to the petitioner to the amount of its lien of $1,833.34, plus interest at 6 per cent. from October 26, 1920, the date when the first defaulted payment became due in accordance with the terms of the conditional bill of sale, and let the balance, if any, be turned into the treasury of the United States.

Ordered accordingly.